# EXHIBIT 3

**The Arrest Warrant issued on November 9, 2005, the Affidavit of Ms. Lavinia A. Quigley, and the Criminal Complaint filed by the Government against Ms. Zhuang on or about November 9, 2005 (1 Copy)**

Case 1:05-mj-00601-AK    Document 9-4    Filed 07/02/2008    Page 1 of 13

AO442(Rev. 12/85) Warrant for Arrest

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

V.

LIRONG ZHUANG

**WARRANT FOR ARREST**

CASE NUMBER: 05 - 0 6 0 1 M - 01

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest ___Lirong Zhuang___
Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

☐ Indictment  ☐ Information  ☒ Complaint  ☐ Order of Court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him or her with (brief description of offense)

See Attached Affidavit

**FILED**

NOV 1 4 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

in violation of Title 18 United States Code, Section(s) § 371.

ALAN KAY
U.S. MAGISTRATE JUDGE
Name of Issuing Officer

ALAN KAY
U.S. MAGISTRATE JUDGE
Title of Issuing Officer

[signature]
Signature of Issuing Officer

NOV 09 2005   District of Columbia
Date and Location

Bail fixed at $ _____   by _____
Name of Judicial Officer

---

**RETURN**

This warrant was received and executed with the arrest of the above-named defendant at _____

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| 11·9·05 | SEAN McLEOD  SDUSM | [signature] |
| DATE OF ARREST | | |
| 11·14·05 | | |

# United States District Court

## For The District of Columbia

UNITED STATES OF AMERICA

V.

Lirong Zhuang
DOB: 4/21/75

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 05 - 0601M - 01

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>December 2004 through the present</u> in the District of <u>Columbia</u> defendant(s) did, (Track Statutory Language of Offense)

knowingly and voluntarily conspire with others intentionally to traffic in goods and knowingly to use counterfeit marks on and in connection with such goods, in violation of Title 18, United States Code, Sections 371 and 2320, and that, in furtherance of the conspiracy and to accomplish its unlawful objects, the defendant and his co-conspirators, committed, within the District of Columbia, at least one overt act.

in violation of Title __18__ United States Code, Section(s) __371__.

I further state that I am __Lavinia Quigley, Detective with the Metropolitan Police Department__, and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

Signature of Complainant
Lavinia Quigley, Detective
Metropolitan Police Department

AUSA, John Carlin  (202) 353-2457
Sworn to before me and subscribed in my presence,

NOV 09 2005
Date

at  Washington, D.C.
City and State

**ALAN KAY**
**U.S. MAGISTRATE JUDGE**
Name & Title of Judicial Officer

Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Lavinia A. Quigley, being duly sworn, hereby depose and state as follows:

A.    Introduction

1.    I am a Police Officer with the Metropolitan Police Department (MPD), in Washington, D.C. I have been a sworn officer with MPD since 1989. My current rank is a Detective, second grade, and I have been assigned to the Major Narcotic Branch of the Criminal Investigations Division, or its predecessors, since August 1994. Before this assignment, I worked with the MPD Rapid Deployment Unit for four years, specializing in vice, narcotics, and gun-recovery investigations. Throughout my law enforcement career, I have attended classes, seminars, and special training sessions on the manufacture, packaging, use, and distribution of controlled substances, as well as the detection and apprehension of narcotics traffickers.

2.    I have served as an undercover officer buying illegal narcotics for six years and have made more than 1000 undercover purchases of illicit drugs of all kinds, including cocaine powder, crack cocaine, marijuana, and heroin. Because of my experience, I am frequently called upon to assist in federal narcotics investigations by making undercover purchases of illegal drugs for such agencies as the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), and the Bureau of Alcohol, Tobacco, and Firearms (ATF). In the course of my police duties, I have interviewed hundreds of persons arrested in Washington, D.C., Maryland, and Virginia engaged in the illegal narcotics trade concerning their unlawful activities. Further, I have spent many hundreds of hours engaged in secret surveillance of persons involved in illegal narcotic activity. I also have participated in a number of long-term vice investigations that have resulted in prosecutions in federal and local courts in Washington, D.C. As a result, I often have testified in federal and local courts. I have also served as the affiant for more than 200 narcotics or firearm search warrants issued by

judges of the Superior Court of the District of Columbia and the U.S. District Court for the District of Columbia.

3.  I make this affidavit in support of an application by the United States of America for the issuance of a criminal complaint and arrest warrant charging LIRONG ZHUANG With conspiracy, in violation of Title 18, United States Code, Section 371. The facts set forth in this affidavit are based upon my own personal knowledge; knowledge obtained from other individuals, including law enforcement officers and industry representatives; my review or the review by other law enforcement officers of documents and of audio and video recordings of undercover law enforcement activities related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; consultations with technical experts both in law enforcement and industry; and information gained through my training and experience. Among the industry experts consulted during this investigation is Blazer Investigations whose private investigators have received extensive training from the manufacturers of trademarked goods, including Louis Vuitton, Gucci America, Inc, Burberry of England, Kate Spade, and Coach, in the recognition of counterfeit goods and who have experience assisting the FBI, United States Customs, and State and local police agencies in the detection of counterfeit goods. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a criminal complaint and arrest warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

B.  **Background**

4.  In December 2004 the Spotsylvania County Sheriff's Office, in Spotsylvania, Virginia, executed search warrants on two locations suspected of trafficking in counterfeit products.

Seized during execution of the search warrants was over $150,000 in retail value of counterfeit purses and wearing apparel. During the search of one of the locations, business and financial records were uncovered linking the illegal Virginia based activity to businesses located in the District of Columbia. Subsequent follow up investigation conducted by Spotsylvania County Sheriff's Detectives and Detectives from the Virginia Attorney General's Financial Crime Intelligence Center further identified one of the District of Columbia based operations as LAI WHOLESALE, also known as ANA WHOLESALE, located at 1335-1337 4th Street, NE, Washington, D.C.

5.    In January 2005 Your Affiant was contacted by Mr. Edward J. Doyle, Director of the Financial Crime Intelligence Center, Virginia Attorney General's Office, regarding the operation and investigation of LAI WHOLESALE, also known as ANA WHOLESALE. Mr. Edward J. Doyle has been the Director of the Financial Crime Intelligence Center for the Office of the Attorney General of Virginia since June 2002. Mr. Doyle is also a sworn Auxiliary Deputy Sheriff with the rank of Detective with the Spotsylvania County Sheriff's Office. Prior to his current employment, Mr. Doyle was employed by the U.S. Department of the Treasury's Financial Crime Enforcement Network (FinCEN), the U.S. Central Intelligence Agency, the Illinois Department of Law Enforcement's Division of Criminal Investigation, and the Illinois Legislative Investigating Commission. He has over 35 years of experience in organized crime and drug related law enforcement and intelligence work; has participated in, conducted, and directly or indirectly supervised over 1,500 criminal investigations relating to money laundering; and has participated in over 15 counterfeit trademark cases. Detective Doyle advised your affiant that in May 2004 representatives of Louis Vuitton and Burberry took civil seizure action on LAI WHOLESALE, also known as ANA WHOLESALE, for trademark infringement.

3

6. From January 2005 through the present, your affiant, along with Detective Doyle and other members of the Washington DC Metropolitan Police Department's Major Narcotics Unit, Major Case Squad, conducted an investigation relating to the sale of counterfeit products by LAI WHOLESALE, also known as ANA WHOLESALE, in violation of Title 18, United States Code, Sections 371 and 2320. The investigation included interviews with two cooperating witnesses, surveillance of the premises, and undercover purchases from the business. Based upon this investigation, it is clear that LIRONG ZHUANG, as well as other managers and employees of LAI WHOLESALE, also known as ANA WHOLESALE, at 1335-1337 4th Street, NE, Washington, D.C, are engaged in the commercial sale of counterfeit products to members of the public.

C. **Relevant Code Sections**

7. Title 18, United States Code, Sections 371 and 2320 provide in pertinent part:

Section 371:
If two or more persons conspire ... to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

Section 2320:
(a) Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services shall, if an individual, be fined not more than $2,000,000 or imprisoned not more than 10 years, or both, and, if a person other than an individual, be fined not more than $5,000,000.

(b) Upon a determination by a preponderance of the evidence that any articles in the possession of a defendant in a prosecution under this section bear counterfeit marks, the United States may obtain an order for the destruction of such articles.

... (e) For the purposes of this section –
    (1) the term "counterfeit mark" means –
        (A) a spurious mark
            (i) that is used in connection with trafficking in goods or services;

4

    (ii) that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and

    (iii) the use of which is likely to cause confusion, to cause mistake, or to deceive. . . .

 (2) the term "traffic" means transport, transfer, or otherwise dispose of, to another, as consideration for anything of value, or make or obtain control of with intent to so transport, transfer, or dispose of. . . .

**D.** **The Investigation**

 **1.** **Cooperating Witnesses**

8. Your affiant and Detective Doyle interviewed two cooperating witnesses regarding the criminal activity conducted by LAI WHOLESALE, also known as ANA WHOLESALE, identified herein as CW-1 and CW-2. These interviews were conducted from December 2004 through May 2005. The two cooperating witnesses are common law husband and wife, and they operated a kiosk located in a mall in Spotsylvania, Virginia, selling counterfeit goods, some of which they purchased from LAI WHOLESALE, also known as ANA WHOLESALE, during the years 2003 and 2004.

9. CW-1 has provided your affiant and Detective Doyle with information that has proven reliable on at least ten occasions and has never provided information to your affiant or anyone else associated with this investigation which has been found to be incorrect. As part of his/her cooperation with law enforcement, CW-1 has entered guilty pleas to two Virginia State misdemeanor offenses, trademark infringement and money laundering, and is awaiting sentencing. CW-1 has been involved in the distribution and sale of counterfeit products for the past two years and is familiar with the packaging and recognition of counterfeit products, particularly counterfeit handbags, belts

and scarves. CW-2 has proven reliable in the past on at least five occasions and also has never provided information to your affiant or anyone else associated with this investigation which has been found to be incorrect. As part of his/her cooperation with law enforcement, CW-2 has entered guilty pleas to two Virginia State misdemeanor offenses, trademark infringement and money laundering, and is awaiting sentencing. CW-2 is also familiar with the packaging and recognition of counterfeit products, particularly counterfeit handbags, belts and scarves.

10. During interviews conducted by your affiant and Detective Doyle, CW-1 admitted purchasing counterfeit products including counterfeit handbags from LAI WHOLESALE, also known as ANA WHOLESALE. Often these transactions would be made in cash, by check and by credit card. CW-1 noted that on each occasion, the CW would receive a receipt for the purchase. CW-2 admitted to similar purchases of counterfeit products, including counterfeit purses, belts, wallets, key cases, and scarves from LAI WHOLESALE, also known as ANA WHOLESALE. Again, these transactions were often in cash, by check and by credit card and CW-2 would normally receive a receipt for each purchase.

    2. **Undercover Purchases**

        a. **January 26, 2005, Attempted Undercover Purchase**

11. On January 26, 2005, acting on information that LAI WHOLESALE, also known as ANA WHOLESALE, located at 1335-1337 4th Street, NE, Washington, D.C., was engaged in the sale of counterfeit handbags, your affiant proceeded to the business in an attempt to purchase counterfeit products. Your affiant conversed with two Asian females, one of whom was subsequently identified as LIRONG ZHUANG, and they indicated that no such merchandise was for sale. Your affiant then departed the store.

6

b.     **April 25, 2005, Undercover Purchase**

12.    On April 25, 2005, your affiant, along with CW-1, proceeded to LAI WHOLESALE, also known as ANA WHOLESALE, located at 1335-1337 4th Street, NE, Washington, D.C., to purchase counterfeit handbags. Upon entering the business, your affiant observed an unidentified female Asian wearing glasses working behind the counter. This subject later identified herself to your affiant only as "Lin." Subsequently, your affiant identified "Lin" as LAN MA. Your affiant also observed LIRONG ZHUANG working in front of the counter. LIRONG ZHUANG later identified herself to your affiant as "Lee."

13.    CW-1 greeted both LAN MA and LIRONG ZHUANG. LIRONG ZHUANG then walked with CW-1 and your affiant toward boxes of purses located in the center of the store. CW-1 told LIRONG ZHUANG that CW-1 and your affiant were there to buy purses and introduced your affiant to LIRONG ZHUANG as CW-1's partner.

14.    LIRONG ZHUANG said they had all kinds of purses, referring to counterfeit purses, naming Gucci, Coach, Burberry, and Prada. Your affiant noticed purses bearing what appeared to be counterfeit trademarks in boxes along both sides of the aisle along with other apparel also bearing what appeared to be counterfeit trademarks including belts, scarves, glasses and sports team hats.

15.    Your affiant and CW-1 looked through the store and selected purchases, assisted by an unidentified male ("UM") who pointed out the various brand named items to your affiant. At one point the UM noted the difference between a legitimate Gucci purse and one they were selling. When CW-1 asked for Burberry, the UM took CW-1 and your affiant into a room located in the back of the store. Your affiant noted several hundred boxes in the room, many open and containing purses bearing what appeared to be counterfeit trademarks. The UM began retrieving several counterfeit

Burberry purses from throughout the storage room. While proceeding back to the check out counter, your affiant and CW-1 looked in the luggage area for Louis Vuitton luggage. The UM noted they were out of stock.

16. Back at the check out counter, LAN MA asked CW-1 and your affiant if they wanted any wallets. CW-1 and your affiant replied, yes. LIRONG ZHUANG then produced several wallets bearing what appeared to be counterfeit trademarks from which to choose. LIRONG ZHUANG said they would have more product this weekend, adding they get product every week. Your affiant purchased seven Prada handbags; six Coach handbags; four Burberry handbags; five Burberry wallets; four Coach Wallets; four Gucci handbags; two Coach belts; five Burberry clips; two Prada clips; and four Coach hats. CW-1 asked LAN MA if they had any trademark symbols. LAN MA said they did and produced a plastic bag from behind the counter which contained Burberry and Prada trademarks which can be affixed to purses. LAN MA then described and demonstrated how the symbols could be affixed to a purse. Your affiant purchased a number of the symbols which LAN MA, LIRONG ZHUANG and the UM affixed to five additional purses purchased by Your Affiant. Your affiant paid $310 in MPD funds for the items purchased and LAN MA put the cash into the cash register behind the counter. CW-1 asked LIRONG ZHUANG where her husband was, and LIRONG ZHUANG replied that he was in China.

17. All items purchased during this undercover visit were later inspected by a private investigator from Blazer Investigations and found to bear counterfeit marks, that is, spurious marks which are identical with, or substantially indistinguishable from, marks that are registered for those goods on the principal register in the United States Patent and Trademark Office and are in use, in violation of Title 18, United States Code, Section 2320.

### c. May 12, 2005, Undercover Purchase

18. On May 12, 2005, your affiant and CW-1 again proceeded to LAI WHOLESALE, also known as ANA WHOLESALE, 1335-1337 4th Street, NE, Washington, D.C., to purchase counterfeit handbags. Upon arrival, your affiant and CW-1 were met by LIRONG ZHUANG who stated LAI WHOLESALE, also known as ANA WHOLESALE, had just received some new items. Your affiant looked through several handbags marked with what appeared to be counterfeit trademarks of Gucci and Coach. After a few minutes, CW-1 told LIRONG ZHUANG that your affiant and CW-1 wanted to purchase Burberry purses. LIRONG ZHUANG then took CW-1 and your affiant to the store room located in the back of the store.

19. LIRONG ZHUANG stated the Burberry were "almost all finished" adding there were not many left. She showed your affiant a box containing what appeared to be counterfeit Burberry products. As your affiant was selecting purses for purchase, your affiant and CW-1 engaged LIRONG ZHUANG in conversation about reports of police seizing counterfeit products. LIRONG ZHUANG said they had not had problems there, adding that was why they kept things in the back. Once your affiant had selected the products for purchase, your affiant, CW-1, and LIRONG ZHUANG proceeded back to the front of the store.

20. Back at the front counter, CW-1 asked LIRONG ZHUANG if she had Burberry and Prada labels for sale. LIRONG ZHUANG provided your affiant with 10 Burberry and 10 Prada labels which can be affixed to generic purses and then sold as trademark products. Your affiant then purchased three Gucci handbags; three Coach handbags; six Burberry handbags; one Burberry wallet; ten Burberry labels; and ten PRADA insignia clips for $200 in pre-recorded funds. LIRONG ZHUANG placed the cash in the cash register located behind the counter and provided Your Affiant

with a receipt. All items purchased during this undercover visit were later inspected by a private investigator from Blazer Investigations and found to bear counterfeit marks, that is, spurious marks which are identical with, or substantially indistinguishable from, marks that are registered for those goods on the principal register in the United States Patent and Trademark Office and are in use, in violation of Title 18, United States Code, Section 2320.

E.  Conclusion

21. Based on the information set forth above, the undersigned affiant submits that there is probable cause to believe that LIRONG ZHUANG conspired with LAN MA and others to traffic in counterfeit goods, in violation of Title 18, United States Code, Sections 371 and 2320.

_____
Detective Lavinia A. Quigley
Metropolitan Police Department

Sworn to before me and subscribed in my presence this ____ day of November 2005.

NOV 09 2005

_____
United States Magistrate Judge
District of Columbia
    ALAN KAY
U.S. MAGISTRATE JUDGE

10